**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| BRANDON ROY ROBINSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:23-cv-02589-SHL-atc |
| | ) | |
| DOMINIQUE TANSLEY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT MISTY
BECKER'S MOTION TO DISMISS, GRANTING IN PART DEFENDANTS MISTY
BECKER AND DOMINIQUE TANSLEY'S MOTIONS FOR SUMMARY JUDGMENT,
AND DENYING PLAINTIFF BRANDON ROY ROBINSON'S MOTIONS FOR
SUMMARY JUDGMENT**

Before the Court are multiple motions. The first is Defendant Misty Becker's Motion to
Dismiss for Lack of Subject Matter Jurisdiction, filed July 12, 2024. (ECF No. 126.) Plaintiff
Brandon Roy Robinson responded on July 28, 2024 (ECF No. 132), and Becker replied on
August 5, 2024 (ECF No. 135). The second is Becker's Cross-Motion for Summary Judgment,
filed July 12, 2024 (ECF No. 124), which Robinson responded to on August 15, 2024 (ECF No.
145).[1] Becker replied on August 23, 2024. (ECF No. 148.) The third is Defendant Dominique
Tansley's Cross-Motion for Summary Judgment, filed July 14, 2024. (ECF No. 127.)[2]
Robinson responded on August 12, 2024. (ECF No. 140.) The fourth is Robinson's Motion for
Summary Judgment as to Defendant Becker, filed June 17, 2024. (ECF No. 119.) Becker

---

[1] The Court allowed Robinson to submit his untimely filing. (ECF No. 144.)
[2] Robinson filed a Motion to Strike Defendant Dominique Tansley's Statement of
Undisputed Facts for Motion for Summary Judgment and Memorandum in Support of Motion
for Summary Judgment on August 8, 2024 (ECF No. 136), which the Court denied on August 8,
2024 (ECF No. 137).

responded on July 12, 2024.  (ECF No. 122.)  Becker also contested multiple facts that Robinson

claimed were undisputed in his motion.  (ECF No. 123.)  The fifth is Robinson's Motion for

Summary Judgment concerning all Defendants, filed February 12, 2024.  (ECF No. 63.)

Defendants Becker, Tansley, and Catrina Crabtree filed their responses on March 10, 2024, April

15, 2024, and August 1, 2024, respectively.  (ECF Nos. 87, 105, 133.)  Robinson replied to

Crabtree's response on August 16, 2024.  (ECF No. 146.)[3]

For the reasons described below, Becker's Motion to Dismiss is **GRANTED** as to Counts

1 and 2 of the Amended Complaint but **DENIED** as to Counts 3 and 4.  In addition, the Court

**DISMISSES** Counts 1 and 2 against all other Defendants sua sponte, based on the Court's lack

of subject matter jurisdiction.  Both Becker and Tansley's Motions for Summary Judgment are

also **GRANTED** as to Count 4 of the Amended Complaint.[4]  Count 4 of the Amended

Complaint is further **DISMISSED** against Defendant Catrina Crabtree.  The Court also **DENIES**

**AS MOOT** Robinson's Motion for Summary Judgment as to Defendant Becker and Robinson's

Motion for Summary Judgment as to all Defendants.  Given these rulings, the remaining claim,

Count 3, is also **DISMISSED** as diversity jurisdiction does not exist and the Court declines to

---

[3] Robinson also filed a Motion to Disqualify Counsel for Defendants Dominique Tansley and Catrina Crabtree on July 25, 2024.  (ECF No. 130.)  The standard for reviewing motions to disqualify counsel is high.  See Grain v. Trinity Health, 431 F. App'x 434, 445 (6th Cir. 2011) (quoting Moses v. Sterling Com. (Am.), Inc., 122 F. App'x 177, 183–84 (6th Cir. 2005)) ("A district court should not disqualify an attorney unless, at a minimum, 'there is a reasonable possibility that some specifically identifiable impropriety actually occurred.'").  Robinson grounds his motion in suspicion and speculation, rather than actual fact.  (See generally ECF No. 130.)  He even admits that he "does not have evidence or tangible proof" of the conflicts that seem to concern him.  (ECF No. 147 at PageID 1706.)  Because there is no support for the Motion, it is **DENIED**.

[4] Robinson also submitted Motions for Relief Against Tansley in March 2024, encouraging the Court to not consider Tansley's response to Plaintiff's Motion for Summary Judgment.  (ECF Nos. 98–100.)  The Court learned that Tansley had a stroke, which excuses her delayed response.  Since she showed good cause for her failures to respond, Plaintiff's Motions are **DENIED**.

exercise supplemental jurisdiction over that state law claim.

## BACKGROUND

This case arises from a custody dispute over Brandon Roy Robinson and Catrina Crabtree's two minor children.[5]  Robinson and Crabtree were divorced in Hawaii, and the Family Court of the Second Circuit of the State of Hawaii ("Hawaii Court") entered the divorce decree in December 2019.  (ECF No. 55 at PageID 467.)  The decree ordered joint legal custody of the couple's two daughters ("PPR and PLR"), with the Parties to arrange reasonable visitation. (Id. at PageID 468.)  Robinson moved to Bartlett, Tennessee, following the divorce.  (Id.)  After the move, the Parties agreed that Robinson would have the children in Tennessee for the summer while they were out of school.  (Id.)

Robinson alleges that in the summer of 2023, PPR and PLR pleaded with him to allow them to stay with him in Tennessee and to not return to Hawaii.  (Id. at PageID 469.)  As a result, on July 21, 2023, Robinson filed a Petition for Emergency Custody and for Injunctive Relief Pursuant to Tennessee Code Annotated § 36-6-219 ("Father's Petition") in the Circuit Court of Tennessee for the Thirtieth Judicial District at Memphis ("Tennessee Court").  (Id. at PageID

---

[5] The facts are taken from Plaintiff's Amended Complaint (ECF No. 55), unless otherwise noted, and only those facts are considered in evaluating the Motion to Dismiss. Additionally, the Court takes judicial notice of the filings in the underlying state court matter, even when they are not directly referenced in the Amended Complaint.  Starlink Logistics, Inc. v. ACC, LLC, No. 1:18-cv-00029, 2019 WL 2341403, at *4 (M.D. Tenn. June 3, 2019) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.") (internal quotations omitted).  Summary judgment motions and motions to dismiss require different approaches to facts: while a Fed. R. Civ. P. 12(b)(1) motion to dismiss requires "accept[ing] as true all of plaintiff's well-pleaded factual allegations," see, e.g., Bd. of Trustees of Painesville Twp. v. City of Painesville, Ohio, 200 F.3d 396, 398 (6th Cir. 1999) (internal citation omitted), a motion for summary judgment requires consideration of factual evidence, see, e.g., McKay v. Federspiel, 823 F.3d 862, 866 (6th Cir. 2016).  Any additional facts necessary for the consideration of the summary judgment motions are undisputed.

469.)  He sought a temporary restraining order that would place the children in his temporary custody and prevent their removal from Shelby County.  (Id.)

The Shelby County Circuit Court held a hearing on the petition on July 28, 2023, attended by Crabtree; her Hawaii-based attorney, Dominique Tansley; her Tennessee-based attorney, Misty Becker; Robinson, and his Tennessee-based attorney, Michael Floyd.  (ECF No. 16-2 at PageID 98−99 (sealed); ECF No. 55 at PageID 470.)  On August 11, 2023, the Tennessee Court entered an Order ("Tennessee Order I") finding that "there was sufficient evidence at this preliminary stage for the Court to assume emergency jurisdiction for the health, safety and protection of the parties['] two minor children."  (ECF No. 16-2 at PageID 98−99 (sealed).)

On August 3, 2023, between the hearing on the Father's Petition and the issuance of Tennessee Order I, Tansley, on behalf of Crabtree, filed an Emergency Motion for Return of the Minor Children ("Mother's Motion") in the Hawaii Court.  (ECF No. 55 at PageID 470.)  The next day, Tansley called Robinson, not Robinson's attorney, to inform him that a hearing on the Mother's Motion was scheduled for August 7, 2023, and to ask him to provide his email address, as there was not enough time to serve him.  (Id. at PageID 471.)  Tansley then sent Robinson the Mother's Motion via email.  (Id.)

The Hawaii Court held the August 7, 2023 hearing and Robinson did not appear.  (Id.) The same day, the court granted the Mother's Motion ("Hawaii Order"), finding "Hawaii has exclusive, continuing jurisdiction of the subject minor children pursuant to the provision of the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA")" and ordered Robinson to return the children to Hawaii by August 9, 2023.  (ECF No. 16-3 (sealed).)  Robinson did not comply with the Hawaii Order.

Given the conflicting state court orders, the Tennessee and Hawaii Courts held a conference regarding jurisdiction[6] on August 14, 2023.  (Id. at PageID 74.)  During the conference, counsel for Robinson argued that Robinson did not receive proper service of the Mother's Motion and the hearing on that Motion.  (ECF No. 16-4 at PageID 110 (sealed).)  In response, the Hawaii judge stated that the Hawaii Order was "valid and not appealable."  (Id.)  After the conference, the Tennessee Court entered an order ("Tennessee Order II"), which found that "Hawaii has exclusive and continuing jurisdiction over this matter" and that, pursuant to the Hawaii Order, "the children shall be returned to Hawaii[.]"  (Id. at PageID 110.)  Subsequently, Crabtree came to Robinson's home accompanied by law enforcement in an attempt to serve the Hawaii Order.  (ECF No. 55 at PageID 474.)

On September 19, 2023, Robinson filed his original Complaint in this Court.  (ECF No. 1 (sealed).)  He also filed a Motion for a Preliminary Injunction, seeking to stay the state court proceedings in Tennessee and Hawaii and prevent his potential arrest.  (ECF No. 2 at PageID 28; see also ECF No. 1 at PageID 9, 16 (noting Robinson's fear of being arrested).)  Robinson asserted that he was deprived of his Fifth and Fourteenth Amendment rights because he was not properly served with notice of the hearing on the Mother's Motion before the issuance of the Hawaii Order.  (ECF No. 2 at PageID 27.)  The Court granted the preliminary injunction, finding that, if the Hawaii Order was enforced, his Fifth and Fourteenth Amendment claims based on the

---

[6] Tennessee Code Annotated section 36-6-219 provides that:

"A court of this state . . . upon being informed that a child custody proceeding has been commenced in, or a child-custody determination has been made by, a court of another state under a statute similar to this section shall immediately communicate with the court of that state to resolve the emergency, protect the safety of the parties and the child, and determine a period for the duration of the temporary order."

lack of service were likely to succeed on the merits, and thus stayed the enforcement of the Hawaii Order against Robinson.  (ECF No. 22.)  In doing so, the Court took no position on the substantive decisions of the Hawaii or Tennessee courts but simply instructed that, "for an order to be enforceable against Robinson, he must be notified in accordance with the UCCJEA."  (ECF No. 22 at PageID 239 n.3.)

On January 27, 2024, Robinson filed a four-count Amended Complaint against Tansley; Crabtree; Sandy Kozaki (the Chief Administrator of the Hawaii Second District Court);[7] and Becker.  (ECF No. 55.)  Robinson alleges that Defendants have conspired against him to deprive him of his constitutional rights through the entry of the Hawaii Order.  (Id. at PageID 476.) Robinson seeks (1) an injunction to stay any state court proceedings in Hawaii and Tennessee; (2) a declaratory judgment for violations of 42 U.S.C. § 1983 based on Defendants' violations of his Fifth and Fourteenth Amendment rights; (3) damages for intentional infliction of emotional distress; and (4) damages for civil conspiracy in violation of 42 U.S.C. §§ 1985 and 1986.  (Id. at PageID 476, 484.)

## ANALYSIS

Each of the Motions at issue here are addressed separately below.

### I.   Becker's Motion to Dismiss

In her Motion to Dismiss for Lack of Subject Matter Jurisdiction, Becker argues that there are three jurisdictional bars that deprive the Court of subject matter jurisdiction over this matter: the Younger Abstention Doctrine, the Domestic Relations Exception, and the Rooker-Feldman Doctrine.  (ECF No. 126.)  Robinson filed a two-page response, arguing that "[w]hile

---

[7] Based on the later agreement of the Parties (ECF No. 129), all claims against Kozaki have been dismissed (ECF No. 131).

Defendant Becker is correct that federal courts bear limited jurisdiction, Section 1983 falls under the 'expressly authorized' exception granting federal courts jurisdiction to enjoin a state proceeding 'to protect people from unconstitutional action under color of state law." (ECF No. 132 at PageID 1614.)  He also asserts that he raised the issue of improper service during the August 14 conference before the Hawaii and Tennessee courts, but the Court had "denied" him from being able to resolve his claims.  (Id. at PageID 1615.)

Becker countered, arguing that Robinson's "threadbare" response did not contain any legal support for his arguments.  (ECF No. 135 at PageID 1641.)  She contends that Robinson's lack of explanation as to why the Younger Abstention Doctrine, Domestic Relations Exception, and Rooker-Feldman Doctrine do not apply constitutes a waiver of those arguments.  (Id.)  On August 16, 2024, in Plaintiff's Reply to Catrina Crabtree's Response to Plaintiff's Motion for Summary Judgment, Robinson provided three responses to Becker's arguments.  (ECF No. 146.)[8]  He proclaims that Younger abstention does not apply since he lacked "an opportunity to raise constitutional claims that started in Hawaii, affected him in Tennessee, and over which this Court has sole jurisdiction."  (Id. at PageID 1702.)  Robinson also asserts that the Domestic Relations Exception does not control since he does not wish to modify an existing decree.  (Id. at PageID 1702.)  And he argues that the Rooker-Feldman Doctrine does not apply because he is not asking this Court to review and consider the Hawaii court's decision or reasoning.  (Id. at PageID 1703.)

---

[8] Robinson's reply to Crabtree's Motion included Robinson's response to arguments Becker included in her reply, rendering the filing as, at least in part, an impermissible sur-reply to Becker's Motion.  However, the Court still considered the arguments contained in the document.

As discussed in more detail below, the Court finds that the <u>Younger</u> Abstention Doctrine does apply to Counts 1 and 2, but not to Counts 3 and 4, and that the Domestic Relations Exception and the <u>Rooker-Feldman</u> Doctrine are also inapplicable as to Counts 3 and 4. Therefore, the Court **GRANTS** Becker's motion to dismiss as to Counts 1 and 2. Because the Court lacks jurisdiction over those claims, it also **DISMISSES** those same counts against the remaining Defendants (Tansley and Crabtree). However, Becker's motion is **DENIED** as to Counts 3 and 4.

To begin, the party that seeks to invoke federal jurisdiction bears the burden of establishing the court's jurisdiction. <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375, 377 (1994). When a defendant believes that the district court lacks statutory or constitutional authority to adjudicate a dispute, it may move to dismiss for lack of subject matter jurisdiction. <u>See</u> <u>generally</u> Fed. R. Civ. P. 12(b)(1). Any party, or a district court itself, may raise the question of subject matter jurisdiction at any time during the pendency of a matter. <u>In re Lewis</u>, 398 F.3d 735, 739 (6th Cir. 2005) (citing <u>Cmty. Health Plan of Ohio v. Mosser</u>, 347 F.3d 619, 622 (6th Cir. 2003)). A dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction is not a judgment on the merits of a plaintiff's case but merely a determination that the court lacks the authority to hear the case. <u>Wilkins v. Jakeway</u>, 183 F.3d 528, 533–34 (6th Cir. 1999). When a Rule 12(b)(1) motion attacks the factual basis for subject matter jurisdiction, the trial court must weigh the evidence and the plaintiff bears the burden of showing that jurisdiction exists. <u>DLX, Inc. v. Kentucky</u>, 381 F.3d 511, 516 (6th Cir. 2004) (citing <u>RMI Titanium Co. v. Westinghouse Elec. Corp.</u>, 78 F.3d 1125, 1133–35 (6th Cir. 1996); <u>United States v. Ritchie</u>, 15 F.3d 592, 598 (6th Cir. 1994); <u>Ohio Nat'l Life Ins. Co. v. United States</u>, 922 F.2d 320, 325 (6th

Cir. 1990)).  If a court determines, based on the facts, that it lacks subject matter jurisdiction, the action must be dismissed.  Id.

### A. <u>Younger</u> Abstention

In her Motion to Dismiss, Becker argues that the <u>Younger</u> Abstention Doctrine precludes the Court from hearing this matter.  (ECF No. 126 at PageID 1579.)  "Abstention is a judicially created doctrine that precludes federal courts from deciding some matters before them, even though other jurisdictional and justiciability requirements are met."  <u>Santeria Sanctuary v. Madison Cnty.</u>, No. 1:21-cv-01091-JDB-jay, 2021 WL 5750438, at *2 (W.D. Tenn. Dec. 2, 2021) (quoting <u>O'Brien v. Herold</u>, No. 2:20-CV-02406, 2021 WL 364255, at *4 (S.D. Ohio Feb. 3, 2021)).  In particular, "<u>Younger</u> abstention requires a federal court to abstain from granting injunctive or declaratory relief that would interfere with pending state judicial proceedings."  <u>Id.</u> (quoting <u>O'Neill v. Coughlan</u>, 511 F.3d 638, 643 (6th Cir. 2008)).  <u>Younger</u> abstention is an important doctrine created to achieve a principle of comity.  <u>See</u> <u>Hayes v. Wethington</u>, 110 F.3d 18, 21–22 (6th Cir. 1997).  Here, as highlighted by Becker, Counts 1 and 2 of the Amended Complaint seek injunctive and declaratory relief related to proceedings in the Hawaii state court and, to a lesser extent, the Tennessee state court.  (<u>See</u> ECF No. 55.)

Although he does not cite any authority, Robinson appears to argue that, because Section 1983 is an exception to the Anti-Injunction Act, the Court must stay the Hawaii Order, regardless of <u>Younger</u>.  (<u>See</u> ECF No. 132.)  He argues that "[s]ection 1983 falls under the 'expressly authorized' exception granting federal courts jurisdiction to enjoin a state proceeding."  (<u>Id.</u> at PageID 1614.)

Beginning with Robinson's response, the Anti-Injunction Act creates "an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of

three specifically defined exceptions."  Cross v. Wayne Cnty. Corp., No. 22-11705, 2022 WL 17826501, at *2 (E.D. Mich. July 29, 2022) (quoting Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs, 398 U.S. 281, 286–87 (1970)) (internal quotation marks omitted).  Relevant here is the first exception: express authorization from Congress.  Id.  In Mitchum v. Foster, the Supreme Court held that 42 U.S.C. § 1983 was a statutory exception to the Anti-Injunction Act. 407 U.S. 225, 243 (1972).  However, in doing so, the Court highlighted that this exception does not require the court to stay a state proceeding.  Id. at 243 & 243 n.9 ("In [ ] concluding [that § 1983 is an exception], we do not question or qualify in any way the principles of equity, comity, and federalism that must restrain a federal court when asked to enjoin a state court proceeding.  These principles . . . were canvassed at length last Term in Younger v. Harris, 401 U.S. 37 [(1971)]; and its companion cases." (citing as companion cases Samuels v. Mackell, 401 U.S. 66 (1971); Boyle v. Landry, 401 U.S. 77 (1971); Perez v. Ledesma, 401 U.S. 82 (1971); Dyson v. Stein, 401 U.S. 200 (1971); Byrne v. Karalexis, 401 U.S. 216 (1971)))  So, while the Anti-Injunction Act does not preclude the Court from staying state court proceedings, the Act also does not require the Court to grant a stay just because it can.  Thus, the question of whether Younger abstention applies here remains.

When evaluating whether to abstain from hearing a case based on Younger, courts consider whether: (1) there is an ongoing state judicial proceeding, (2) those state proceedings implicate state interests, and (3) there is an adequate opportunity in the state proceedings to raise constitutional challenges.  Santeria Sanctuary v. Madison Cnty., No. 1:21-cv-01091-JBD-jay, 2021 WL 5750438, at *2 (W.D. Tenn. Dec. 2, 2021) (citing O'Neill v. Coughlan, 511 F.3d 638, 643 (6th Cir. 2008)).  Robinson does not appear to dispute that the first and second Younger factors have been met (see ECF No. 132), thus the Court considers only the third factor.

Courts presume that state courts are able to protect the interests of the federal plaintiff.

Kelm v. Hyatt, 44 F.3d. 415, 420 (6th Cir. 1995) (citing Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 17 (1987)).  Because all state court judges are bound by the United States Constitution, federal courts

> cannot assume that state judges will interpret ambiguities in state procedural law to bar presentation of federal claims. . . . Accordingly, when a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary.

Pennzoil Co., 481 U.S. at 17.  Thus, the burden is on Robinson to prove the inadequacy of the state court in protecting his federal constitutional rights.

In his response to the Motion to Dismiss, Robinson states that he raised the issue of service during the August 14, 2023 conference before the Tennessee and Hawaii courts but was "denied an avenue to resolve these claims by Court."  (ECF No. 132 at PageID 1615.)  He cites to the Tennessee order regarding jurisdiction (Id. at PageID 1615), which states "[a]fter statements of counsel for father regarding improper service, Judge Rouse advised this Court that his order was valid and not appealable" (ECF No. 16-4 at PageID 110 (sealed).).  However, Robinson does not cite to any legal authority, besides the Hawaii judge's reported statement in a Tennessee Order, to show that the Hawaii Order is not appealable to a higher state court.  (See ECF No. 132.)  Even with that statement, Robinson has failed to show that he actually had no recourse.[9]  Thus, Robinson has not met his burden of showing that the Hawaii Courts could not have addressed his federal constitutional claims.  As a result, all three Younger factors are met.

---

[9] Indeed, other than the highest courts in a particular jurisdiction, a judge's word is not the final word.  See Plaut v. Spendthrift Farm, 514 U.S. 211, 213 (1995) ("[O]nce a judgment has achieved finality in the highest court in the hierarchy, the decision becomes the last word of the judicial department with regard to the particular case or controversy.")

However, even when the <u>Younger</u> factors are met, there are three exceptions to employing the doctrine to abstain from hearing a case: "(1) where the state proceeding is motivated by a desire to harass or is conducted in bad faith; (2) where a challenged statute is flagrantly and patently violative of express constitutional prohibitions; and (3) where there is an extraordinarily pressing need for immediate federal equitable relief." <u>Santeria Sanctuary v. Madison Cnty.</u>, No. 1:21-cv-01091-JBD-jay, 2021 WL 5750438, at *2 (W.D. Tenn. Dec. 2, 2021) (citing <u>Kugler v. Helfant</u>, 421 U.S. 117, 125 (1975); <u>Huffman v. Pursue, Ltd.</u>, 420 U.S. 592, 611 (1975)).

Reading his response generously, Robinson appears to assert that the third exception—extraordinary need for equitable relief—applies here.  (<u>See</u> ECF No. 132; ECF No. 146.)  For this exception to apply, a plaintiff must describe a situation that presents "extraordinary circumstances."  <u>Santeria Sanctuary</u>, 2021 WL 5750438, at *2 (citing <u>Kugler</u>, 421 U.S. at 125) ("Only if 'extraordinary circumstances' render the state court incapable of fairly and fully adjudicating the federal issues before it, can there be any relaxation of the deference to be accorded to the state criminal process.").  As discussed above, however, Robinson has not shown that the Hawaii courts are an inadequate avenue for raising these constitutional issues, given the right to appeal the Hawaii Court's ruling.  This Court did grant the preliminary injunction at the beginning of this matter, when the questions of where the children should reside at that moment and whether Robinson was subject to arrest needed immediate answers.  (<u>See</u> ECF No. 22.) However, at this stage, it is unclear that the preliminary injunction entered almost a year ago remains necessary.  Given the lack of extraordinary circumstances now, the <u>Younger</u> Abstention exceptions do not apply here, and there is no jurisdiction to hear Robinson's claims for injunctive and declaratory relief from the state court ruling.

Thus, Becker's Motion to Dismiss Counts 1 and 2 is **GRANTED**.  Because the Court may <u>sua sponte</u> raise subject matter jurisdiction, Counts 1 and 2 are also dismissed against all other Defendants.

Though <u>Younger</u> abstention applies to Counts 1 and 2, the <u>Younger</u> Abstention Doctrine does not apply to all state civil proceedings.  This narrow doctrine only applies to matters that "implicate a State's interest in enforcing the orders and judgments of its courts."  <u>Sprint Commc'ns, Inc. v. Jacobs</u>, 571 U.S. 69, 72–73 (2013) (internal citation omitted).  The claims in Counts 3 and 4, regarding intentional infliction of emotional distress and civil conspiracy under 42 U.S.C. §§ 1985 and 1986, do not have the same ties to the Tennessee and Hawaii court proceedings as those under the UCCJEA.  Thus, applying <u>Younger</u> abstention to those claims would go against the goals of this judicially-created doctrine.  Becker's Motion to Dismiss Counts 3 and 4, based on <u>Younger</u> abstention, is **DENIED**.

### B.  Domestic Relations Exception

Becker also seeks dismissal based on the Domestic Relations Exception to federal court jurisdiction.  The narrow Domestic Relations Exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees."  <u>Ankenbrandt v. Richards</u>, 504 U.S. 689, 703 (1992).  This exception to subject matter jurisdiction applies to cases involving diversity and cases involving federal questions.  <u>See</u> <u>Firestone v. Cleveland Trust Co.</u>, 654 F.2d 1212, 1215 (6th Cir. 1981) (internal citations omitted) ("Although a domestic relations case may meet the technical requirements for diversity jurisdiction, federal courts traditionally have refrained from exercising jurisdiction over cases which in essence are domestic relations disputes."); <u>Chambers v. Michigan</u>, 473 F. App'x 477, 479 (6th Cir. 2012) (citing <u>Firestone</u>, 654 F.2d at 1215) ("Even when brought under the guise of a federal question action, a suit whose substance is domestic

relations generally will not be entertained in a federal court.").  Its range is intended to be limited.  McGuire v. Tennessee, No. 22-5614, 2023 WL 9289932, at *2 (6th Cir. Mar. 17, 2023), cert. denied, 144 S. Ct. 218 (2023) (quoting Marshall v. Marshall, 547 U.S. 293, 307 (2006)).

Counts 3 and 4 are claims for intentional infliction of emotional distress and civil conspiracy.  Neither of these claims are primarily domestic relations disputes.  Since they are outside the scope of the Domestic Relations Exception's narrow coverage, Becker's Motion to Dismiss Counts 3 and 4 based on the Domestic Relations Exception abstention is **DENIED**.

### C.  Rooker-Feldman Doctrine

Becker also seeks dismissal based on the Rooker-Feldman Doctrine.  The doctrine—coming from Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and D.C. Ct. of Appeals v. Feldman, 460 U.S. 462 (1983)—restricts federal courts from hearing claims seeking "relief from injury caused by the state court judgment."  In re Hamilton, 540 F.3d 367, 371–72 (6th Cir. 2008) (internal citation and quotation marks omitted).  Other than the Supreme Court of the United States, federal courts are barred from exercising appellate jurisdiction over state courts' decisions and proceedings, "including claims that are 'inextricably intertwined' with issues decided in state court proceedings."  Exec. Arts Studio, Inc., v. City of Grand Rapids, 391 F.3d 783, 793 (6th Cir. 2004) (citing D.C. Ct. of Appeals v. Feldman, 460 U.S. 462, 486–87 (1983); Peterson Novelties, Inc. v. City of Berkley, 305 F.3d 386, 390–91 (6th Cir. 2002)).  The doctrine's scope is "limited."  VanderKodde v. Mary Jane M. Elliott, P.C., 951 F.3d 397, 402 (6th Cir. 2020).

As discussed supra, the outstanding claims are for intentional infliction of emotional distress and civil conspiracy.  Neither the Hawaii state court (ECF No. 16-3 (sealed)) nor the Tennessee state court (ECF No. 16-4 (sealed)) entered judgments on these claims.  While these

14

claims arise out of the state proceedings, they are not "inextricably intertwined" with those proceedings, and the Rooker-Feldman Doctrine does not bar Robinson's outstanding claims from being heard in federal court.

Becker's Motion to Dismiss Counts 3 and 4 is **DENIED**.

## II.      Motions for Summary Judgment

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party can prove the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the non-moving party's cause.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Although the court views all evidence and factual inferences in a light most favorable to the non-moving party, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

The movant has the initial burden of "demonstrat[ing] the absence of a genuine issue of material fact."  Celotex, 477 U.S. at 323. The burden then shifts to the non-moving party to go beyond the pleadings and designate specific facts showing there is a genuine issue for trial.  Id. at 324 (quotations omitted).  Ultimately, in evaluating the appropriateness of summary judgment, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson, 477 U.S. at 251–52.  As explained below, Robinson's §§ 1985 and 1986 claims (Count 4) fail as a matter of law.

### A. Tansley and Becker's Cross-Motions for Summary Judgment

In her Cross Motion for Summary Judgment, Becker argues that there is no evidence she was involved with a civil conspiracy and that Robinson's 42 U.S.C. §§ 1985 and 1986 claims fail as a matter of law.  (ECF No. 124-1 at PageID 1253–56.)[10]  She also asserts that Robinson failed to provide evidence of any facts that support his state law Intentional Infliction of Emotional Distress ("IIED") claim against her.  (Id. at PageID 1256–59.)  In response to Becker, Robinson argues that an express agreement is not necessary to prove the existence of a civil conspiracy and that, according to a Texas district court case, the Supreme Court has left open the question of whether racial animus must be pled to state a claim under §1985(3).  (ECF No. 145-1 at PageID 1697–1698 (arguing that though Bray v. Alexandra Women's Health Clinic, 506 U.S. 263, 268 (1993) reaffirmed that, under § 1985(3), discriminatory animus must have motivated conspirators who deprive any individual of equal protection or equal privileges and immunities, the Court "left open the question of whether a plaintiff must plead racial animus to state a claim" in a § 1985(3) conspiracy not involving equal protection concerns per Cervini v. Cisneros, 593 F. Supp. 3d 530, 537 (W.D. Tex. 2022) (internal quotation marks omitted)).)  Robinson does not address Becker's concerns about his IIED claims.  (See id.)  In her reply, Becker argues Robinson "waived" his IIED claims by ignoring her reasoning.  (ECF No. 148 at PageID 1710.) She also asserts that "there is still zero evidence of any conspiracy" and his §§ 1985 and 1986 claims fail without a showing of animus.  (Id. at PageID 1711–13.)

Tansley also argues, in her Cross Motion for Summary Judgment, that Robinson offered no evidence supporting his civil conspiracy claim or his IIED claim.  (ECF No. 127 at PageID

---

[10] Since Counts 1 and 2 have already been dismissed supra, this analysis will only involve Counts 3 and 4 from Robinson's Amended Complaint.

1591–92.)  In his response to Tansley, Robinson asserts that she conspired with state actors and that he had demonstrated adequate proof of an IIED claim.  (ECF No. 140 at PageID 1672–75.)

These arguments are addressed below.

**1.  Sections 1985 and 1986**

In his Amended Complaint, Robinson alleges that, because Defendants had access to his contact information but failed to serve him properly, they conspired with the Hawaii Judge to illegally issue orders interfering with Robinson's constitutional rights.  (ECF No. 55 at PageID 483.)  Becker and Tansley argue that Robinson's 42 U.S.C. §§ 1985 and 1986 claims fail as a matter of law because he cannot satisfy either section's foundational elements.  (ECF No. 124-1 at PageID 1255; ECF No. 127 at PageID 1591.)

Although Robinson does not specify in his complaint which section of 1985 is applicable, in his response to Becker's Motion for Summary Judgment, he exclusively cites to § 1985(3).  (ECF No. 145-1 at PageID 1698.)  To state a claim under § 1985(3), a plaintiff must allege the existence of

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

Webb v. United States, 789 F.3d 647, 671–72 (6th Cir. 2015) (quoting Vakilian v. Shaw, 335 F.3d 509, 518–19 (6th Cir. 2003)).  To meet the second requirement, a "racial" or "otherwise class-based, invidiously discriminatory animus" must motivate the conspiracy.  Griffin v. Breckenridge, 403 U.S. 88, 102 (1971); Webb, 789 F.3d at 672.[11]  However, because a conspiracy case will "rarely" have direct evidence showing an express agreement among the

---

[11] The Court is not persuaded by the Texas district court case relied on by Robinson.

conspirators, "circumstantial evidence may provide adequate proof of conspiracy." <u>Weberg v. Franks</u>, 229 F.3d 514, 528 (6th Cir. 2000) (alteration in original).  Nevertheless, both § 1983 and § 1985(c) conspiracy claims are subject to "relatively strict" pleading requirements that require "some degree of specificity."  <u>Fieger v. Cox</u>, 524 F.3d 770, 776 (6th Cir. 2008) (internal citations omitted); <u>Dallas v. Holmes</u>, 137 F. App'x 746, 752 (6th Cir. 2005) ("Conspiracy claims under § 1985(3) must be pleaded with the same specificity as conspiracy claims under § 1983." (internal citation omitted)).

Here, Robinson fails to allege any discriminatory animus, much less offer a genuine dispute of fact as to this element.  (<u>See</u> ECF No. 55 at PageID 482–84.)  Indeed, Robinson does not allege, hint at, or provide any evidence that Defendants acted with any discriminatory animus whatsoever in his Amended Complaint (<u>see id.</u>) or in his responses to the respective motions (<u>see</u> ECF No. 140; ECF No. 145).  Because he has offered no allegations or evidence as to animus, he has not provided the requisite amount of specificity needed for these claims.  Because there is no genuine dispute of material fact as to the § 1985 claim, Becker and Tansley are entitled to judgment as a matter of law.[12]

---

[12]Becker also argues that Robinson's conspiracy claim fails because she is a private individual, not a state actor.  (ECF No. 124-1 at PageID 1255.)  Tansley also argues that Robinson failed to show that she partook in a civil conspiracy with state actors.  (ECF No. 127 at PageID 1591, 1593.)  Robinson offers no response to Becker on this point (ECF No. 145-1 at PageID 1697–98), but does respond to Tansley's motion, arguing that Tansley's conduct constituted state action and that she conspired with state actors (ECF No. 140 at PageID 1670–74).

A civil conspiracy under § 1985(3) necessitates state action, "which requires that the defendants acted under state authority or were themselves state actors."  <u>Gerber v. Herskovitz</u>, 14 F.4th 500, 511 (6th Cir. 2021) (citing <u>United Bhd. of Carpenters & Joiners v. Scott</u>, 463 U.S. 825, 832 (1983); <u>Lugar v. Edmondson Oil Co.</u>, 457 U.S. 922, 938–39, (1982)).  Defendants were not state actors and there is no evidence that they acted under state authority.  However, because Robinson's conspiracy claim fails on other grounds, a full analysis of this issue is not necessary.

"Section 1986 provides a cause of action against persons who aid and abet violations of §

1985." Barrow v. City of Hillview, 775 F. App'x 801, 809 (6th Cir. 2019).  If a court finds no

violation of § 1985, there can be no violation of § 1986.  Id. (citing Haverstick Enters., Inc. v.

Fin. Fed. Credit, Inc., 32 F.3d 989, 994 (6th Cir. 1994)).  Therefore Becker's and Tansley's

Motions for Summary Judgment as to Count 4 are **GRANTED**.

Although Crabtree did not file a Motion for Summary Judgment on this issue,

a district court may, at any time, sua sponte dismiss a complaint for lack of
subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil
Procedure when the allegations of a complaint are totally implausible, attenuated,
unsubstantial, frivolous, devoid of merit, or no longer open to discussion.

Apple v. Glenn, 183 F.3d 477, 479 (6th Cir. 1999) (citing Hagans v. Lavine, 415 U.S. 528, 536–

37 (1974); In re Bendectin Litig., 857 F.2d 290, 300 (6th Cir. 1988)).  Given the Court's

conclusion that Count 4 is insufficient as a matter of law as to Becker and Tansley, it is also

insufficient as to Crabtree.  As stated supra, Robinson failed to plead or offer evidence of

discriminatory animus, which is required for these claims.  Moreover, a conspiracy claim under §

1985(3), like the one that Robinson attempted to allege here, requires the involvement of two or

more individuals.  See Irons v. City of Bolivar, 897 F. Supp. 2d 665, 669 (W.D. Tenn. 2012)

(citing Johnson v. Hills & Dales Gen. Hosp., 40 F.3d 837, 839 (6th Cir. 1994)).  An individual

cannot conspire with themselves.  Given the Court's determination that there is no evidence that

Becker and Tansley were part of a conspiracy, Crabtree is the only member of the alleged

conspiracy remaining.

Given the lack of discriminatory animus and because it is impossible to have a conspiracy

involving only one person, Robinson's conspiracy claim as to Crabtree is **DISMISSED**, just as

that claim was for the two other Defendants.

### 2. Supplemental Jurisdiction for Robinson's Intentional Infliction of Emotional Distress Claim

Becker and Tansley both also argue that they are entitled to summary judgment on Robinson's Intentional Infliction of Emotional Distress claim.  (ECF No. 124-1 at PageID 1256–59; ECF No. 127 at PageID 1592.)  However, as described below, because the Court declines to exercise supplemental jurisdiction, these arguments do not need to be assessed.

Given the lack of any federal claim remaining in this case, the exercise of supplemental jurisdiction over Count 3 must be considered.  Supplemental jurisdiction is a "doctrine of discretion, not a plaintiff's right."  Miller v. Collins, No. 23-3191, 2023 WL 7303305, at *4 (6th Cir. Nov. 6, 2023) (quoting United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) (internal quotation marks omitted).  If only state law claims remain after federal questions are resolved, courts have discretion under Article III of the United States Constitution to retain or deny jurisdiction.  Id. (citing Osborn v. Haley, 549 U.S. 225, 245 (2007)).  When federal law claims are dismissed before a trial, courts generally decline to exercise supplemental jurisdiction over the outstanding state law claims.  See Robert N. Clemens Tr. v. Morgan Stanley DW, Inc., 485 F.3d 840, 853 (6th Cir. 2007) (citing Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988); Taylor v. First of Am. Bank–Wayne, 973 F.2d 1284, 1287 (6th Cir. 1992)).

Here, Robinson's federal law claims, Counts 1, 2, and 4 of the Amended Complaint, have been dismissed as to all Defendants.  The Court has no obligation to hear Plaintiff's Intentional Infliction of Emotional Distress claim, which is rooted in state law, and will not exercise supplemental jurisdiction over that claim.

Plaintiff's Intentional Infliction of Emotional Distress claim, as it applies to all Defendants, is hereby **DISMISSED**.

**3. Robinson's Motions for Summary Judgment Against Defendant Becker and All Defendants**

Because all of Robinson's claims have been dismissed, his Motion for Summary Judgment as to Defendant Becker (ECF No. 119) and Motion for Summary Judgment regarding all Defendants (ECF No. 63) are both **DENIED AS MOOT**.

## CONCLUSION

As discussed above, Becker's Motion to Dismiss is **GRANTED** as to Counts 1 and 2 of the Amended Complaint but **DENIED** as to Counts 3 and 4.  In addition, the Court **DISMISSES** Counts 1 and 2 against all other Defendants sua sponte, given the lack of subject matter jurisdiction.  Both Becker and Tansley's Motions for Summary Judgment are also **GRANTED** as to Count 4.  Count 4 of the Amended Complaint is also **DISMISSED** against all Defendants.[13] The Court **DENIES AS MOOT** Robinson's Motion for Summary Judgment against Defendant Becker and Robinson's Motion for Summary Judgment regarding all Defendants.  By declining to exercise supplemental jurisdiction, Count 3 of the Amended Complaint is **DISMISSED** against all Defendants.  Because all issues in this matter have been resolved by this Order, the pretrial conference and trial are cancelled.

**IT IS SO ORDERED,** this 11th day of September, 2024.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE

---

[13] Robinson also submitted Motions for Relief Against Tansley in March 2024, encouraging the Court not to consider Tansley's response to Plaintiff's Motion for Summary Judgment.  (ECF Nos. 98–100.)  The Court learned that Tansley had a stroke, which excuses her delayed response.  Since she showed good cause for her failures to respond, Plaintiff's Motions for Relief are **DENIED**.  Robinson's Motion to Disqualify Counsel for Tansley and Crabtree is also **DENIED**.